AMERICAN INDUSTRIAL LEASING COMPANY, Plaintiff,

v.

Robert H. LAW et al., Defendants and Third-Party Plaintiffs,

v.

R. Ronald SINCLAIR, Third-Party Defendant.

Civ. No. H–76–20.

United States District Court, D. Maryland.

Oct. 16, 1978.

Mitchell Stevan, Baltimore, Md., for plaintiff.

Charles C. W. Atwater, Baltimore, Md., for defendants and third-party plaintiffs Law, Dixon, Dixon, Meeks and Meeks.

Peter Larsen, Rockville, Md., for defendants and third-party plaintiffs LeCocq and LeCocq.

Robert E. Sharkey, Baltimore, Md., for third-party defendant Sinclair.

ALEXANDER HARVEY, II, District Judge:

Some twelve years ago, a privately owned dormitory was constructed near the campus of the University of West Virginia in Morgantown, West Virginia. Disputes among various interested parties arising out of the construction of this building have led to a plethora of litigation in West Virginia state and federal courts and in this Court, culminating in the filing of the pending diversity action.

In 1964, several of the defendants, namely Robert H. Law, Alfred LeCocq, William E. Dixon and Harry E. Meeks, along with John H. Junkins,[1] formed the Beechhurst Avenue Joint Venture for the purpose of constructing and managing a proposed new dormitory to be used by students of the University. Subsequently, the Joint Venture entered into a sale-and-leaseback arrangement with the plaintiff here, American Industrial Leasing Company (hereinafter "AIL"), a West Virginia corporation. In its amended complaint, AIL asserts that the defendants Law, LeCocq, Dixon and Meeks breached the covenant of general warranty contained in the deed dated November 1, 1966 whereby AIL acquired title to the property.[2] AIL claims that the breach occurred when the defendants permitted a mechanic's lien of Baker & Coombs, Inc., the building contractor, to remain undischarged after the dormitory was completed, with the result that AIL

---

1. Junkins was not named as a defendant in this case because his obligations have been discharged by bankruptcy. Meeks is now deceased, and the case has been continued against his estate.

2. In its original complaint, plaintiff asserted a second claim against the defendants based on a theory of a breach of the lease. This claim has been abandoned because it is concededly barred by limitations. However, no limitations problem exists as to plaintiff's claim asserted under West Virginia law that defendants breached the covenant of general warranty contained in the deed.

was compelled to pay the contractor the amount of the lien, plus interest. AIL is here seeking to recover the sum of $61,011.24, plus interest and costs.

Plaintiff first filed suit in this Court on December 6, 1972. *American Industrial Leasing Co. v. Law, et al.,* Civil No. 72–1237–H. The original complaint in the earlier case asserted a cause of action based on a theory of the assignment of the judgment in the mechanic's lien case to AIL. An amended complaint was later filed in the earlier case which asserted an additional claim against defendants based on a theory of the assignment of contract rights by Baker & Coombs to AIL. On February 3, 1975, AIL sought once again to amend its complaint in the earlier case in order to assert a third Count based on a theory of breach of the covenant of general warranty in the deed (this being the same claim now pressed in this suit). On March 5, 1975, this Court denied AIL leave to file a second amended complaint on the ground that it was too late in the proceedings to allege a brand new theory of recovery. Subsequently, AIL moved for a dismissal of the earlier suit, requesting that the dismissal be without prejudice to its right to file a new action based on a theory of a breach of the covenant of general warranty in the deed. After a hearing in Chambers at which counsel for defendants opposed a dismissal without prejudice, this Court entered an Order on April 21, 1975 dismissing Civil No. 72–1237–H without prejudice. Accordingly, this prior dismissal has no *res judicata* effect on the claim pressed by plaintiff in this suit.

On January 7, 1976, the pending action was filed by AIL. The amended complaint here names as defendants not only certain partners in the Joint Venture, namely Law, LeCocq, Dixon and Meeks, but also the wives of LeCocq, Dixon and Meeks. However, in final argument, plaintiff conceded that under the evidence in the case, the wives were exempt from personal liability. Judgments will therefore be entered in favor of these defendants, and the sole remaining defendants are therefore the partners Law, LeCocq, Dixon and Meeks.

Relying on a theory of indemnity, LeCocq has asserted a cross-claim against defendant Law and a third-party claim against third-party defendant R. Ronald Sinclair, alleging that he assigned his rights in the Joint Venture to Law and Sinclair on October 27, 1966. Defendants Law, Dixon and Meeks have also asserted a third-party claim against Sinclair, seeking contribution from Sinclair in the amount of his alleged interest in the Joint Venture.

On April 22, 1977, this Court denied the motion of defendants Law, Dixon, Meeks and LeCocq for summary judgment, and also denied the motion of Sinclair to dismiss the third-party complaint. At that time, the Court held that a fuller development of the facts was necessary, particularly as to the *res judicata* effect of prior litigation in the West Virginia courts involving these same parties.

This case then came on for trial before this Court sitting without a jury. Various witnesses testified and numerous exhibits were admitted in evidence, including various pleadings, Orders and docket entries in the West Virginia case. After due consideration of the trial testimony, the exhibits and the briefs submitted by the parties, this Court has concluded that this action is barred by *res judicata* and that judgment should therefore be entered in favor of the defendants and third-party defendant.

I

*The Facts*

As indicated, the dispute between the parties to this action has been the subject of much previous litigation. The two most significant cases for the purposes of this action are *Baker & Coombs, Inc. v. Law, et al.,* No. 3043 (Circuit Court of Monongalia County, West Virginia, 1971) and *Dixon v. AIL,* No. 3481 (Circuit Court of Monongalia County, West Virginia, 1975).[3] An appeal

---

**3.** Other litigation included distraint proceedings instituted by AIL against the Joint Venture on May 22, 1968, the previous case filed in this Court (Civil No. 72–1237–H), and a suit by the

to the West Virginia Supreme Court of Appeals was taken in the latter case. *Dixon v. American Industrial Leasing Co.*, 205 S.E.2d 4 (1974).

### (a) *The mechanic's lien case*

On March 16, 1967, Baker & Coombs, the building contractor, recorded a mechanic's lien against the property owned by AIL and leased to the Joint Venture. On August 21, 1967, Baker & Coombs filed suit in the Circuit Court of Monongalia County against AIL, the Joint Venture and two financial institutions, seeking the sale of the property to satisfy the unpaid lien. *Baker & Coombs, Inc. v. Law, et al.*, No. 3043. This action lay dormant for three years.

After a trial held on January 19, 1971, Judge Marvin R. Kiger entered an Order dated February 19, 1971, which upheld the validity of the mechanic's lien and ordered the sale of the property unless the lien was discharged by one or all of the defendants. At the trial, a copy of the lease agreement between AIL and the Joint Venture had been introduced into evidence, and after the trial, counsel for AIL sought findings of fact and conclusions of law to be entered in AIL's favor against the Joint Venture for breach of the lease. The AIL motion was denied, but Judge Kiger indicated to counsel that he might permit an amendment to AIL's answer in order to assert a cross-claim against the members of the Joint Venture. The entry of final judgment was stayed for 120 days from February 5, 1971 to permit AIL to appeal to the Supreme Court of Appeals of West Virginia the lower court's denial of AIL's motion seeking judgment against the Joint Venture.

On February 24, 1971, AIL filed a motion to amend its answer to assert a cross-claim against the partners. On March 8, 1971, Judge Kiger granted AIL's motion over the objection of the partners. By the terms of the March 8, 1971 Order, the cross-claim was deemed to relate back to the date of the original answer.

When no answer was filed to the cross-claim by the partners, AIL on April 20, 1971 filed a motion for a default judgment. Argument was heard on this motion on April 28 and April 30, 1971. The partners contended that they were not in default because they had not yet been served with a copy of the amended answer. On April 30, the motion for default judgment was denied without opinion by Judge Kiger.

It was the testimony in the pending case of Mr. Charles S. Armistead, who was then attorney for AIL, that the motion was denied because the issue was not "tried." On the other hand, it was the testimony of Mr. M. Morgan, who was then the attorney for the partners, that the ruling was a procedural one. In any event, AIL's attorney chose not to serve on the partners' attorney a copy of the amended answer and apparently did not go forward with the case.

On June 2, 1971, the West Virginia trial court extended its original stay of judgment for an additional ninety days from June 5, 1971. On October 2, 1971, AIL discharged the lien by payment to Baker & Coombs of $61,011.24, plus interest. On January 17, 1972, the action was finally dismissed by Order of Court, with the written consent of AIL's counsel. As of the date of dismissal, the partners had not been served with a copy of the amended answer which had asserted the cross-claim against them, and no appeal had been prosecuted by AIL from the denial of its motion seeking judgment against the partners.

### (b) *The wrongful eviction case*

On June 12, 1968, the partners had filed a separate action in the Circuit Court of Monongalia County against AIL and the Board of Governors of West Virginia University, contending that AIL and the University had conducted negotiations for the sale of the dormitory to the University in such a way that the Joint Venture would be caused to lose some $500,000 which had

partners against the University in the Northern District of West Virginia, *Dixon v. West Virginia University Board of Governors*, Civil No.

C–69–1–F (N.D.W.Va. June 18, 1969), *aff'd* 427 F.2d 12 (4th Cir. 1970).

been expended and also to lose the future profits the partners had expected to earn from the project. *Dixon v. American Industrial Leasing Co.,* No. 3481. The Board of Governors was dismissed from that action on the ground of sovereign immunity. AIL then counterclaimed against the partners, seeking back rent, taxes paid by AIL and sums paid to discharge another mechanic's lien in favor of Westinghouse. The counterclaims were tried in advance of the partners' claim against AIL, with judgment being entered in favor of AIL in the amount of $80,956.45. The partners' complaint was subsequently dismissed by the lower state court for failure to join as a party plaintiff R. Ronald Sinclair (the third-party defendant herein), who had allegedly received an assignment of LeCocq's partnership interest on October 27, 1966. An appeal was then taken to the West Virginia Supreme Court of Appeals by the partners. In addition, the partners attempted to raise the same claims in an action filed against the University in the United States District Court for the Northern District of West Virginia, Civil Action No. C–69–1–F, and by way of a counterclaim in the action then pending in this Court which had been brought against them by AIL, namely Civil No. 72–1237–H. Both this Court and the federal court in West Virginia declined to entertain the claim while the case of *Dixon v. American Industrial Leasing Co.,* No. 3481, was pending in the West Virginia state courts. In the appeal of that action, the West Virginia Supreme Court of Appeals reversed the trial court's dismissal of the partners' complaint, holding that Sinclair was not an indispensable party to that action, and the case was remanded for trial. *Dixon v. American Industrial Leasing Co.,* 205 S.E.2d 4 (1974). Then, on May 21, 1975, following a trial on remand, a jury found for the partners, and judgment was entered in their favor in the amount of some $100,-000. At that trial, AIL did not assert the claim advanced here as a supplementary counterclaim or as a defense by way of set-off. That case (namely No. 3481) is again on appeal to the West Virginia Supreme Court of Appeals, and argument has not as yet been held. Thus, the parties' litigation in the West Virginia courts has still not been finally concluded.

## II

### Res Judicata

The defendants here contend that either or both of the state court cases in West Virginia involving these same parties preclude the bringing of this action by plaintiff AIL because principles of *res judicata* apply here. There is little doubt that the doctrine of *res judicata* bars not only matters which were actually litigated in a prior proceeding but also matters which could have been litigated. *E. g., Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *see Stebbins v. Nationwide Mutual Insurance Co. or Companies,* 528 F.2d 934, 936 (4th Cir. 1975), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976); *Lovely v. Laliberte,* 498 F.2d 1261 (1st Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974); *see also* 1B Moore's *Federal Practice* ¶ 0.405[1] at 624. As the Supreme Court stated in the *Sunnen* case, 333 U.S. at 597, 68 S.Ct. at 719:

The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. *See Von Moschzisker Res Judicata,* 38 Yale L.J. 299; *Restatement of the Law of Judgments,* §§ 47, 48.

Thus, "[j]udicial economy ordinarily demands that the whole controversy between the parties should be brought before the same court in the same action * * *." *Schmieder v. Hall,* 545 F.2d 768, 771 (2d Cir. 1976).

■ The parties here agree that the law of West Virginia is applicable in this case. The West Virginia law of *res judicata* was set forth in *Walker v. West Virginia Gas Corporation,* 121 W.Va. 251, 3 S.E.2d 55 (1939), as follows (quoting from *Sayre's Adm'r v. Harpold,* 33 W.Va. 553, 11 S.E. 16 (1890)):

> An adjudication by a court having jurisdiction of the subject matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto, and coming within the legitimate purview of the subject matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*

■ On the record here, this Court is satisfied that the West Virginia *res judicata* rule bars the claim asserted by plaintiff in this case. *Cf. Kriesel v. Berkshire Associates, Inc.,* 452 F.2d 491 (4th Cir. 1971) (applying a similar Virginia rule). In the mechanic's lien case, *Baker & Coombs, Inc. v. Law, et al.,* No. 3043, this Court would note that AIL introduced the lease into evidence at the trial, filed an unsuccessful motion for judgment over against the partners, sought and obtained leave of court to file an amended answer asserting a cross-claim, and filed an unsuccessful motion for default judgment on the cross-claim. Then, without either appealing the denial of its motion for judgment over or pressing for judgment on its cross-claim, AIL acquiesced in the dismissal of the suit. Thus, while the litigation may not have reached a final judgment on the merits as to AIL's claim that the partners were legally required to reimburse it for the amount paid to discharge the mechanic's lien, it is quite apparent that the case was not decided on the merits solely because of AIL's tactical decision to abandon the cross-claim asserted there. Had AIL pressed its cross-claim, or its appeal, one lawsuit would have been sufficient to resolve the matter. Under these circumstances, this Court is satisfied that *res judicata* bars this present action. *See Stebbins v. Nationwide Mutual Insurance Co. or Companies, supra* at 938.

■ It is undoubtedly correct, as contended by AIL, that a cross-claim under Rule 13(g) of the West Virginia Rules of Civil Procedure[4] is always permissive. This simply means that a party who does not assert a cross-claim is *not* barred by *res judicata* in a subsequent action. *Augustin v. Mughal,* 521 F.2d 1215 (8th Cir. 1975). However, in this case, AIL did assert a cross-claim and even litigated its validity through the default judgment stage of the proceedings before abandoning the claim thereafter. Principles of *res judicata* do not permit a litigant to abandon a claim in one proceeding between the parties so that it may assert the claim in another proceeding between the same parties.

■ AIL argues that the cross-claim in the state court was based on an alleged breach of the lease and that the amended complaint here alleges instead a breach of the covenant of general warranty in the deed. However, AIL cannot avoid the *res judicata* effect of its prior actions merely because it has now asserted a ground for recovery different from that which it asserted in the mechanic's lien case. *See Restatement of Judgments,* § 63, Comment (a). Whether styled a breach of lease or a breach of the covenant of general warranty in the deed, the underlying claim is one whereby AIL seeks reimbursement for pay-

---

4. The West Virginia Rules of Civil Procedure are modeled after the Federal Rules of Civil Procedure.

ment of the mechanic's lien. A litigant like AIL is not entitled to assert such an underlying claim against defendants like the partners more than once. *Schmieder v. Hall, supra* at 771. West Virginia law simply does not permit a single cause of action to be split and prosecuted piecemeal under different legal theories at different times and in different courts. *Byus Mankin Lumber Co. v. Landes Construction Co.,* 109 W.Va. 667, 156 S.E. 71, 72 (1930).

■ There is likewise no merit to AIL's contention that assertion of the cross-claim was "premature" pending the entry of final judgment on the mechanic's lien. *See* Wright & Miller, *Federal Practice and Procedure: Civil* § 1431 at 168–169 (construing the identical Rule 13(g), F.R.Civ.P.). In any event, that purported "prematurity" was eliminated when on October 2, 1971, AIL discharged the lien. At that time, the suit was still pending, and the subsequent dismissal of the action some three months later with the consent of AIL has foreclosed relitigation of AIL's claim here.

■ Finally, AIL contends that the denial of its motion for default judgment by Judge Kiger precluded litigation of the cross-claim. AIL relies on an April 30, 1971 letter between two of the attorneys, Mr. Charles S. Armistead (local counsel) and Mr. Donald E. Egan (general counsel). Referring to the denial of the motion for default judgment by Judge Kiger, Mr. Armistead stated in the letter, "It seemed to be the opinion of the Court that the issue was not 'tried' at the hearing, and this formed the basis of his decision."

This Court will give little weight to this letter and to Mr. Armistead's subsequent testimony at the trial. Such evidence discloses no more than an attempt by the lawyer for an unsuccessful litigant to speculate as to the reason why his motion was denied. This Court would note that the asserted reason, namely that the issue was not previously "tried", makes little sense in the context of a motion for a *default* judgment. Moreover, the speculation on the part of AIL's counsel overlooks the critical fact that Judge Kiger granted AIL leave to amend the answer, even after the trial on the merits, in order to allow AIL to assert its cross-claim. Finally, this contention of AIL ignores the objection raised by opposing counsel and noted in Mr. Armistead's letter that the parties were not in default because they had not been served with a copy of the amended answer. After a review of all the evidence in this case, this Court is satisfied that AIL was not precluded by the West Virginia court from prosecuting its cross-claim and that its subsequent abandonment of the cross-claim bars relitigation here.

Furthermore, this Court would note that AIL had a second opportunity to litigate the issue presented here in the trial of No. 3481, the wrongful eviction case in 1975. Rule 13(e), W.Va.R.Civ.P., provides for supplementary counterclaims by leave of Court. This procedure would have been particularly appropriate under the circumstances of this particular case, where the plaintiff's previous civil action in this Court, Civil No. 72–1237–H, was dismissed by the undersigned Judge at the request of AIL on April 21, 1975, several weeks before the trial on remand in the later West Virginia case. While a supplementary counterclaim under Rule 13(e) is not considered a compulsory counterclaim nor an independent ground for a finding of *res judicata* here, nevertheless the failure of AIL to assert a supplementary counterclaim in the later West Virginia case is inexplicable. In March, AIL knew that this Court would not permit further amendment of the complaint in Civil No. 72–1237–H to assert a claim based on a theory of breach of the covenant of general warranty in the deed. Some two months later, in May, the case was tried before a jury in the Circuit Court of Monongalia County. Yet AIL did not raise the claim pressed here, even though the same parties were before the West Virginia court. Rather, it filed this suit on January 7, 1976. It may properly be inferred that AIL had no intention of resolving the dispute between the parties in a single litigation, but preferred to reserve to itself the option of proceeding later in another forum.

If there was ever a case illustrating the sound principles which underlie the doctrine of *res judicata,* this is the case. It is now some twelve years since the deed in question was executed. There have been five separate actions in West Virginia and in Maryland in which AIL and the Joint Venture have litigated various aspects of the dispute between them. But still there has been no final resolution of the dispute, because AIL has chosen to proceed in a piecemeal fashion. Considerations of economy of judicial time and of the necessity for finality in judicial matters indicate that a litigant should not be permitted repeated access to the courts for the resolution of a single controversy.

■■■ For all these reasons, this Court is satisfied that under West Virginia law, a West Virginia court would give *res judicata* effect to the prior dismissal of the AIL cross-claim in the mechanic's lien case. Such adjudication is final and conclusive, because the claim now asserted came within the legitimate purview of the subject matter of the earlier action. *Walker v. West Virginia Gas Corporation, supra.* Under the Full Faith and Credit Clause, U. S. Constitution, Art. 4 § 1, and under 28 U.S.C. § 1738, the earlier West Virginia judgment is entitled to the same *res judicata* effect in this Court. *Davis v. Davis,* 305 U.S. 32, 40, 59 S.Ct. 3, 83 L.Ed. 26 (1938); *Bennun v. Board of Governors of Rutgers,* 413 F.Supp. 1274, 1278 (D.N.J.1976); *Cyclops Corporation v. Fischbach & Moore, Inc.,* 71 F.R.D. 616 (W.D.Pa.1976); *see generally* 1B Moore's *Federal Practice,* ¶ 0.406[1] (2d Ed. 1974).

Judgment will therefore be entered in favor of all the defendants and in favor of the third-party defendant.[5] This Court's findings of fact and conclusions of law, under Rule 52(a) of the Federal Rules of Civil Procedure, are embodied in this Opinion, whether or not expressly so characterized.

---

**5.** In view of this Court's decision, there is no need to reach the merits of the controversy. Although not pressed by counsel for defendants, there is some question about the scope of a covenant of general warranty of the type involved here. *See Travis v. Midway Oil Corp.,*

144 F.Supp. 863, 866–67 (D.Wyo.1956); *see generally* 21 C.J.S. *Covenants* § 110 at 972. Similarly, there is no need to decide the issues raised by the cross-claims and the third-party claim.